UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONAIR LLC, : | |
| : | |
| *Plaintiff,* : | |
| : | |
| v. : | No. 3:23-cv-1038 (JCH) |
| : | |
| LIGHTHOUSE WHOLESALE, LLC et al., : | |
| : | |
| *Defendants*. : | |

## RULING ON MOTION TO COMPEL

Plaintiff Conair LLC brings this action for false endorsement and false advertising under the Lanham Act, 15 U.S.C. § 1125(a), seeking to enjoin defendant Lighthouse Wholesale, LLC from reselling plaintiff's BaBylissPRO branded products. The Complaint alleges as follows in relevant part.

Conair develops, markets, and sells styling and beauty products and accessories under the BaBylissPRO brand name. ECF 1 ¶ 10. Lighthouse, in concert with codefendants LaLa Daisy LLC and Beacon Brands, LLC, "offers for sale and sells BaBylissPRO® Products on the Internet using the BaBylissPRO Marks." *Id.* ¶¶ 11, 31. However, because Lighthouse is not part of Conair's exclusive network of Authorized Resellers, the BaBylissPRO products sold by Lighthouse are not protected by the BaBylissPRO manufacturer's warranty and customer service support. *Id.* ¶¶ 23-25.

The Complaint does not claim that the BaBylissPRO products sold by Lighthouse are counterfeit. Instead, in the words of § 1125(a)(1), Conair claims that Lighthouse uses "false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is likely to confuse or deceive consumers, or that misrepresents the

nature, characteristics, qualities, or geographic origin of the BaBylissPRO products that Lighthouse resells. *Id.* ¶¶ 64-68. The specific examples cited in the Complaint are as follows:

- Lighthouse advertises on laladaisy.com and walmart.com that a BaBylissPRO curling iron and a straightener it sells are covered by a "manufacturer warranty" (*id.* ¶ 36)

- Lighthouse advertises that it sells "new" BaBylissPRO products (*id.* ¶ 37)

- Lighthouse includes a "BaByliss Frequently Asked Questions" section on laladaisy.com (*id.* ¶ 43)

- Lighthouse advertises that "We purchase all of our products directly from the manufacturer or an authorized distributor." (*id.* ¶ 45).

The Complaint alleges that Lighthouse's advertisements create the false or misleading impression that Lighthouse "is among BaBylissPRO's Authorized Reseller Network, or otherwise associated with, affiliated with, or sponsored by BaBylissPRO," that the BaBylissPRO products sold by Lighthouse are covered by the warranty, and that Lighthouse can provide adequate customer service for BaBylissPRO products. *Id.* ¶¶ 39-45. As relief, Conair seeks, among other things, to enjoin Lighthouse from acquiring or selling BaBylissPRO products. *Id.* at 19.

### A. Summary of parties' positions

Pending before the Court is Conair's Motion to Compel information concerning the source of BaBylissPRO products sold by Lighthouse, including where/what/when Lighthouse purchased BaBylissPRO products (Interrogatory 2 and Request for Production 1), the chain of custody from Conair to Lighthouse (Interrogatory 10), and the basis of Lighthouse's contention that it purchases BaBylissPRO products directly from the manufacturer or an authorized distributor (Interrogatory 12). *See* ECF 44. Conair contends that this sourcing information is relevant to its allegations that Lighthouse's product listings and advertisements falsely designate the origin of the products, falsely represent sponsorship by or affiliation with BaBylissPRO, and falsely represent the nature, qualities, and characteristics of the products. *Id.* at 4. Additionally,

Conair argues that source information is relevant to whether the products are genuine, which Lighthouse has placed at issue by raising the First Sale Doctrine as a defense. *Id.*

In its opposition, Lighthouse notes the absence of any affirmative allegation in the Complaint that the products are not genuine. ECF 43 at 2. It further contends that Conair is attempting to use discovery as an end-run around a merits resolution. *Id.* Lighthouse asserts – and Conair did not dispute at oral argument – that whereas Conair's Authorized Resellers are contractually obligated not to sell below Conair's minimum advertised price ("MAP"), Lighthouse can sell at a discount because it has no contract with Conair. *Id.* This implies that for Lighthouse to turn a profit, at least one of the Authorized Resellers must be selling to Lighthouse below the MAP. Lighthouse contends that the true purpose behind Conair's discovery requests is to expose the breaching distributor(s) and force them to stop selling to Lighthouse. *Id.* In other words, it contends that this discovery would effectively provide Conair with the relief it seeks without having to prove its case. *Id.*

To summarize, the issues presented are (1) whether there is a live dispute as to whether the products are genuine, (2) whether the source information has some other relevance to the false advertising claim, and (3) whether the discovery is improperly motivated.

### B. Discussion

The Court begins with a discussion of legal standards governing the § 1125(a) claims. In relevant part, the statute prohibits

> any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1).

The Complaint appears to assert both a false association claim under § 1125(a)(1)(A) and a false advertising claim under § 1125(a)(1)(B). The elements of a false association claim are "first, that [plaintiff's] mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Chanel, Inc. v. WGACA, LLC*, No. 18-cv-2253 (LLS), 2022 WL 902931, at *5 (S.D.N.Y. Mar. 28, 2022) (noting that false association has same elements as trademark infringement). As for a false advertising claim, a plaintiff must establish that "the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016). As compared to a literally false message, "[a]n impliedly false message is one that is likely to mislead or confuse consumers, as it leaves an impression that conflicts with reality." *Picket Fence Preview, Inc. v. Zillow, Inc.*, No. 22-2066-CV, 2023 WL 4852971, at *4 (2d Cir. July 31, 2023) (cleaned up) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)); *see also Church*, 843 F.3d at 65 (implied falsity can be demonstrated either "by extrinsic evidence of consumer confusion," or "by evidence that the defendant intended to deceive the public through deliberate conduct of an egregious nature, in which case a rebuttable presumption of consumer confusion arises"). Thus, likelihood of consumer confusion is an issue both in false association claims and claims of impliedly false advertising.

1. **No actual dispute that the goods are genuine**

Conair's primary justification for seeking discovery of the sourcing information is to investigate Lighthouse's assertion that it is selling genuine BaBylissPRO products, which Lighthouse has raised both as a defense to liability and in its counterclaims for declaratory relief. *See* ECF 15 at Def. Answer ¶¶ 29-31, Second and Third Affirmative Defenses, and Counterclaims ¶¶ 2, 10, 13-14, 17, 35.  "As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner." *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61-62 (2d Cir. 1992).  This principle finds expression both in the first sale doctrine and the doctrine of nominative fair use, both of which Lighthouse has raised in its defenses.

a. **First sale doctrine**

Lighthouse invokes the first sale doctrine in its Second and Third affirmative defenses. *See* ECF 15 at 6-7.  This doctrine provides that "there is no violation of the Lanham Act, despite the subject goods having been resold without the trademark holder's consent, if the trademark holder authorized the first sale of the trademarked goods into the stream of or channels of commerce and the goods at issue are found to be genuine." [1] *Energizer Brands, LLC v. My Battery Supplier, LLC*, 529 F. Supp. 3d 57, 62 (E.D.N.Y. 2021) (citation and quotation marks omitted).  However, the Second Circuit has held that "goods are not genuine if they do not

---

[1] Some decisions refer to goods that "use identical marks, are sold in the original packaging, and are obtained legitimately from the manufacturer" as gray market goods. *See Abbott Laboratories v. Adelphia Supply USA*, No. 15-cv-5826 (CBA)(MDG), 2015 WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015). "Although the term 'gray market goods' typically refers to goods manufactured outside the United States which are imported without the consent of the trademark holder, . . . courts in this Circuit have applied the legal standards from gray market goods cases to claims involving trademarked domestic goods sold by unauthorized retailers." *Coty Inc. v. Cosmopolitan Cosms. Inc.*, 432 F. Supp. 3d 345, 351 (S.D.N.Y. 2020).

conform to the trademark holder's quality control standards . . . or if they differ materially from the product authorized by the trademark holder for sale." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (citations omitted). The quality control exception to the first sale doctrine "applies when goods do not conform to the trademark holder's quality control standards," and the material difference exception "applies if the goods differ in a way that would likely be relevant to a consumer's decision to purchase them." *Coty Inc. v. Cosmopolitan Cosms. Inc.*, 432 F. Supp. 3d 345, 350 (S.D.N.Y. 2020) (citations omitted).

### b. Nominative fair use

Lighthouse has cited nominative fair use as its Seventh Affirmative Defense, *see* ECF 15 at 8, although the Second Circuit has held that this theory informs the consumer confusion element of the plaintiff's claim rather than operating as an affirmative defense. *See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 167-68 (2d Cir. 2016). "The doctrine of nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." *Id.* at 165 (quotation marks omitted); *see also Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) (exclusive right to use trademark "generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product.") (citation and quotation marks omitted). In such cases, the test for likelihood of consumer confusion includes not only the usual *Polaroid* factors[2] but

---

[2] The eight *Polaroid* factors are "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of

6

also the nominative fair use factors articulated in *International Information Systems,* 823 F.3d at 168. [3]

### c. Conair does not dispute that the products are genuine

Conair has not established a sufficient foundation for the Court to conclude that the sourcing information is relevant to the claims or defenses. Conair hangs its hat on Lighthouse's allegation that the products are genuine. However, despite Conair's insistence at oral argument, it has neither affirmatively alleged that the products are not genuine nor fairly denied that they are. In fact, it straightforwardly alleges that Lighthouse "offers for sale and sells BaBylissPRO® Products on the Internet using the BaBylissPRO Marks." *Id.* ¶ 31. Although the Complaint includes an online customer review from 2017 asserting that an item sold by Lighthouse was "not authentic" and another from 2021 asserting that "[t]he item is a Chinese version of the original BaBylissPRO," ECF 1 ¶ 56, Conair does not adopt these assertions or affirmatively allege that they are correct – instead, it cites them as evidence that "[t]he harm being caused by the Defendant in this case is not theoretical." *Id.* There is no allegation that the goods are counterfeit, nor does Conair allege that they are materially different (such as manufactured to the

---

consumers in the relevant market." *Souza v. Exotic Island Enterprises, Inc.*, 68 F.4th 99, 110 (2d Cir. 2023) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

[3] The nominative use factors are: "(1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services." *Int'l Info. Sys.*, 823 F.3d at 168.

specifications of a foreign market) or do not conform to Conair's quality control measures. [4] *Cf. Zino Davidoff*, 571 F.3d at 243 ("goods are not genuine if they do not conform to the trademark holder's quality control standards . . . or if they differ materially from the product authorized by the trademark holder for sale") (citations omitted).

During oral argument, Conair asserted that its allegations at ¶ 45 ("Defendant advertises [to] consumers that it fulfills product orders with purchases directly from BaBylissPRO or an 'authorized distributor,' creating the false impression with consumers that it is authorized to resell BaBylissPRO Products") and ¶ 46 ("[a]s "an unauthorized reseller of BaBylissPRO products, defendant does not purchase BaBylissPRO products directly from BaBylissPRO and is not authorized to purchase BaBylissPRO products from any other source for resale") of its Complaint are sufficient to allege that the products are not genuine. The Court disagrees. Simply because Lighthouse allegedly does not purchase directly from Conair and has not authorized Lighthouse to purchase or resell the products does not necessarily mean that the products are not genuine. And what Conair alleges to be false is not the authenticity of the products but the "impression" that Lighthouse is affiliated with Conair. Conair's allegations and Lighthouse's insistence it sells genuine products are not mutually exclusive; in fact, they can be true simultaneously. In short, Conair's Complaint neither explicitly nor impliedly alleges that Lighthouse does not sell genuine BaBylissPRO products.

Indeed, in its Answer to Counterclaims, Conair tacitly admits that that Lighthouse sells products from the BaBylissPRO line. Lighthouse's counterclaims allege that:

---

[4] Conair's allegation that "the sale of BaBylissPRO® Products by unauthorized resellers, such as Defendant, interferes with BaBylissPRO's ability to control the quality of products bearing the BaBylissPRO Marks," ECF 1 ¶ 57, does not amount to an explicit contention that the goods sold by Lighthouse do not actually conform to Conair's quality control standards.

> The BaBylissPRO branded products advertised and sold by Lighthouse are authentic and genuine products which bear the authentic BaBylissPRO trademark and associated trade dress in the packaging design.

ECF 15, Counterclaims ¶ 17.  In its corresponding answer, Conair states:

> BaBylissPRO admits that Defendant is not authorized to sell BaBylissPRO Products and is not an Authorized Reseller of BaBylissPRO Products. BaBylissPRO further admits that Defendant offers for sale and sold, and is currently offering for sale and selling, BaBylissPRO Products on various online commerce sites.  BaBylissPRO lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 17.

ECF 17 ¶ 17.  Not only does Conair fail to directly and explicitly deny Lighthouse's allegation that the BaBylissPRO products it sells are "authentic and genuine," but the unqualified acknowledgement that Lighthouse "offers for sale and sold, and is currently offering for sale and selling, BaBylissPRO Products on various online commerce sites" amounts to an implicit admission that the products are, in fact, genuine.

Furthermore, to the extent that Conair cited Lighthouse's first sale defense to justify the discovery of sourcing information, the applicability of the first sale doctrine is questionable under the circumstances.  The doctrine "applies only where a purchaser resells a trademarked article under the producer's trademark, and nothing more."  *Chanel, Inc. v. WGACA, LLC*, No. 18-cv-2253 (LLS), 2018 WL 4440507, at *3 (S.D.N.Y. Sept. 14, 2018) (citation and quotation marks omitted) (first sale doctrine was not grounds for dismissal where complaint alleged that defendant "did much more than laconically resell [plaintiff's] products" and gave the impression that it was "selling on [plaintiff]'s behalf").  Conair does not claim that it is unlawful for Lighthouse to resell BaBylissPRO products *per se*.  Instead, the claims are that Lighthouse falsely implies an affiliation with the manufacturer and falsely advertises that purchasers will receive certain benefits if they buy BaBylissPRO products from Lighthouse.  It does not appear

9

that the first sale doctrine can bar such claims, and those claims – at least as pleaded in this case – do not require investigation or proof of whether the products are genuine.

As for the nominative fair use issues, that doctrine applies where the defendant "use[s] a plaintiff's trademark to identify the plaintiff's goods," *see Int'l Info. Sys.* 823 F.3d at 165, and examines whether it has been done in a manner likely to confuse consumers. Insofar as the current state of the pleadings indicates that there is no actual dispute that Lighthouse is reselling plaintiff's goods, defendant's assertion of nominative fair use is not a predicate for discovery of the sourcing information.

### 2. Sourcing information not relevant to other elements

Nor is the sourcing information relevant to the other elements of Conair's affirmative claims. The issue of where Lighthouse obtains its discounted BaBylissPRO products does not bear on the validity of Conair's trademark or whether Lighthouse's use is likely to cause consumer confusion (false association claim). Nor does source information bear upon whether Lighthouse's advertising is impliedly false, is material in that it is likely to influence purchaser decisions, or is placed in interstate commerce, or whether Lighthouse's conduct is the cause of actual or likely injury to the plaintiff (false advertising claim). The only element that the sourcing information might possibly shed light on is whether it is literally false for Lighthouse to advertise, as asserted in the Complaint, that "[w]e purchase all of our products directly from the manufacturer or an authorized distributor." ECF 1 ¶ 45. Conair has explicitly alleged that it does not sell to Lighthouse but, as discussed above, it has neither alleged that Lighthouse does not buy from Conair's authorized distributors nor denied that the products are genuine. Instead, what Conair alleges to be false is the "impression" created by the advertisement as to

Lighthouse's degree of association with Conair.  The sourcing information does not bear on that question.

Additionally, none of the cases cited by Conair provide support for sourcing discovery based on the facts as currently pleaded.  Conair notes that a defendant in *Gucci America, Inc. v. Duty Free Apparel, Ltd.* disclosed one of its sources in an interrogatory answer; however, the claim in that case was for counterfeiting and, in fact, despite finding the defendant liable, the Court fashioned injunctive relief designed to protect the identity of the defendant's legitimate sources because "revealing his sources to Gucci effectively amounts to eliminating those sources and [would] drive him entirely out of the Gucci business."  315 F. Supp. 2d 511, 523-24 (S.D.N.Y. 2004).  Conair also cites an unpublished decision granting a motion to compel sourcing information in *Energizer, LLC v. MTA Trading, Inc.*, 1:20-cv-01583 (MKB)(CLP) (E.D.N.Y), at ECF 54.  However, the claim in that case was against an <u>authorized</u> distributor for sourcing batteries from a third party in breach of its contract with the plaintiff, which is markedly different than the facts alleged here.  *See also*, *e.g.*, *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006) (trial court ordered sourcing discovery where complaint alleged tortious interference relating to defendant reseller's purchases from plaintiff's authorized distributors).[5]

In short, the pleadings as currently constituted do not raise any contested issue to which the sourcing information is fairly relevant.

---

[5] In its opposition brief, defendant cited an unpublished order from another case it is currently litigating in which a court declined discovery as to source information in the absence of a counterfeiting claim,, *Grund & Mobile Verwaltungs AG v. Lighthouse* Wholesale, LLC, 1:21-cv-3996 (LDH)(VMS) (E.D.N.Y.) (ECF 35 filed 12/8/22).  However, that magistrate judge's order is pending objection before the district judge in that case, and the Court has not relied on it in issuing this ruling.

### 3. Lighthouse's allegation of improper motive

As a point of clarification, the Court's ruling on the pending Motion to Compel is based on the law as applied to the facts presently pleaded this case, not based on Lighthouse's argument that Conair is improperly seeking the sourcing discovery so it can force its distributor to stop supplying Lighthouse and thereby obtain the relief it seeks without having to prove the merits of its case. The Federal Rules of Civil Procedure are a litigant's safeguards against false allegations (Rule 8(b) and Rule 11), irrelevant or disproportionate discovery (Rule 26(b)), and annoyance, embarrassment, oppression, or undue burden or expense (Rule 26(c)). Accordingly, to the extent that Lighthouse alleges that Conair intends to use certain discovery in this action to pursue its distributors for breach of contract, such alleged motive in itself is not grounds for denying the discovery so long as it meets the requirements of the discovery rules in the context of this case. *See*, *e.g.*, *In re Am. Anthracite & Bituminous Coal Corp.*, 22 F.R.D. 504, 508 (S.D.N.Y. 1958) ("[I]t is no objection to the examination that the deposition may be used in some other action or proceeding, if it is relevant to the pending federal action."). As for Lighthouse's objection that disclosure of its "confidential source(s)" would be "severely damaging to Lighthouse's business," ECF 43 at 5, that goes to proportionality, oppression, and undue burden. Having found that the discovery is not relevant based on the present record, the Court does not reach that question.

Lastly, Lighthouse's suggestion at oral argument that it might seek to amend its pleadings to take certain issues off the table did not factor into this ruling. The Court is denying the Motion to Compel based on the current record. The denial is without prejudice to renewal in the event that some good faith basis arises to seek the discovery.

**C. Conclusion**

For all the foregoing reasons, plaintiff's Motion to Compel (ECF 44) is DENIED without prejudice.

This is not a recommended ruling.  This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the District Judge upon objection timely filed.

SO ORDERED, this 9th day of April, 2024, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge